## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## IN AND FOR LEE COUNTY

SOUTHWEST FLORIDA VETERINARY
SPECIALISTS INCORPORATED and
DR. WENDY G. ARSENAULT and
MICHAEL J. ARSENAULT,

Plaintiffs,

v.                                                          Case No.

PETVET CARE CENTERS (FLORIDA), LLC,

Defendant.

_____/

## COMPLAINT

Plaintiffs, SOUTHWEST FLORIDA VETERINARY SPECIALISTS INCORPORATED, a Florida corporation, (hereinafter "SWFL Vet"), and DR. WENDY ARSENAULT and MICHAEL J. ARSENAULT, (collectively, "Arsenaults") by and through their undersigned counsel, sue Defendant, PETVET CARE CENTERS (FLORIDA) LLC ("PetVet"), a Delaware limited liability company (hereinafter "Buyer"), and state as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      This is an action for damages in excess of $30,000.00, exclusive of interest, costs, and attorneys' fees.

2.      SWFL Vet is a Florida Corporation which had its principal place of business in Bonita Springs, Florida.

3.      The Arsenaults are residents of Lee County, Florida, are over the age of 18, and are otherwise *sui juris*.

4.　　　PetVet is a Delaware Corporation with its principal place of business located in Westport, Connecticut, and is otherwise *sui juris*.

5.　　　Venue is proper in Lee County because the events giving rise to the cause of action occurred therein, PetVet is doing business in Lee County and the parties submitted to, and waived any objection to, the venue for any proceedings to be in the state or federal court in Lee County, Florida under Section 7.15 of the Asset Purchase Agreement entered into between SWFL Vet, the Arsenaults, and PetVet.

## GENERAL ALLEGATIONS

6.　　　SWFL Vet was the operator of a specialized veterinary clinic and 24-hour emergency veterinary hospital located at 28400 Old 41 Road, Suite 1, Bonita Springs, Florida 34135.

7.　　　The Arsenaults were the owners of SWFL Vet.

8.　　　PetVet is a business that purchases and operates veterinary clinics throughout the United States, including Florida.

9.　　　On or about December 24, 2019, SWFL Vet and Arsenaults executed an Asset Purchase Agreement (hereinafter the "Agreement") with PetVet.　A redacted copy of the Agreement is attached hereto as "**Exhibit A**."[1]

10.　　　Under the Agreement, SWFL Vet is referred to as Seller.

11.　　　Under the Agreement, the Arsenaults are referred to as Owners.

12.　　　Under the Agreement PetVet is referred to as Buyer.

---

[1]　　　Pursuant to Article 5, paragraph 5.1(c) of the Agreement, the terms of the Agreement constitute confidential information.　As such, only a redacted version of Exhibit A has been included herewith at the time of filing. Said document is currently available and shall be provided to opposing counsel immediately upon receipt of a notice of appearance and written request from counsel. Additionally, the Plaintiffs will be filing a motion seeking to file under seal an unredacted version of Exhibit A.

13.    The Agreement provided for the purchase of substantially all of the assets of SWFL Vet and certain liabilities by PetVet in consideration of the purchase price.

14.    Exhibit A to the Agreement, provided for an Earnout Bonus to be paid to SWFL Vet and the Arsenaults by PetVet in the event that EBITDA exceeds the Target EBITDA.

15.    EBITDA is defined in Exhibit A to the Agreement as "the annualized EBITDA of the Business based on the last twelve months of EBITDA of the Business as of the second (2nd) anniversary of the Closing Date, as determined by Buyer in accordance with the accounting principles consistently applied by Buyer. The formula or accounting principles used by Buyer to calculate EBITDA shall be the same formula or accounting principles used to determine Target EBITDA."

16.    PetVet has failed to disclose the formula or accounting principles used by PetVet to calculate EBITDA.

17.    PetVet has failed to disclose the formula or accounting principles used to determine the Target EBITDA.

18.    The Earnout Period is defined in Exhibit A to the Agreement as "the period beginning on the Closing Date and ending on the second (2nd) anniversary of the Closing Date."

19.    Contrary to Exhibit A, Pet Vet has claimed that the earnout period is one year instead of the two years identified in the Agreement.

20.    As stated in paragraph (b) of Exhibit A of the Agreement, PetVet is to deliver its determination of the EBITDA no later than sixty (60) days after the end of the Earnout Period.

21.    PetVet failed to deliver its determination of the EBITDA to SWFL Vet and the Arsenaults until on or around March 25, 2022, more than one month later than required under the Agreement.

22.     In accordance with paragraph (c) of Exhibit A of the Agreement, "Seller is to have reasonable access to the books and records of Buyer relating to the calculations of the EBITDA during regular business hours for the sole purpose of verifying Buyer's computations of the EBITDA."

23.     SWFL Vet and the Arsenaults have requested reasonable access to the records of PetVet relating to the calculation of EBITDA in accordance with the Agreement.

24.     However, SWFL Vet and the Arsenaults were not given reasonable access to the applicable books and records of PetVet pursuant to the terms of the Agreement despite multiple requests.

25.     Instead, PetVet provided a summary Excel sheet without the backup documents and has denied access to all backup documents.

26.     Further, it appears that PetVet has changes from cash accounting to accrual accounting and has not provided documents relating to the conversion.

27.     The failure of PetVet to provide SWFL Vet and the Arsenaults with reasonable access to its books and records pertaining to the calculation of EBITDA and Target EBITDA has prevented SWFL Vet and the Arsenaults from being able to accurately determine whether the EBITDA provided by PetVet is accurate.

28.     As required under Section (d) of Exhibit A to the Agreement, a Notice of Disagreement dated April 20, 2022, which set forth the basis for their disagreement, was hand delivered to Buyer within thirty (30) days following receipt by SWFL Vet and Arsenaults of PetVet's calculation of EBITDA.  A true and correct copy of the Notice of Disagreement is attached hereto as **"Exhibit B"**.

29.     As required under Section (d) of Exhibit A to the Agreement, the Parties are to try to resolve their differences in good faith and finally determine the amount of the EBITDA within the fifteen (15) day period following receipt of the Notice of Disagreement.

30.     PetVet refused to communicate with SWFL Vet and the Arsenaults after receipt of the Notice of Disagreement stating that its responses to email questions to the Arsenaults prior to receipt of the Notice of Disagreement were sufficient replies to SWFL Vet's and Arsenaults' concerns.

31.     PetVet then proceeded to unilaterally seek to retain a neutral auditor to make a determination as to the EBITDA.

32.     PetVet's seeking of a Neutral auditor was not only premature, but Section (d) of Exhibit A to the Agreement states that "the parties shall retain the Neutral auditor", not PetVet unilaterally.  PetVet, SWFL Vet and the Arsenaults should have selected a mutually agreeable neutral auditor after all disputes between the parties were resolved.

33.     Section 7.15 of the Agreement states that disputes between the parties arising out of or relating to the Agreement are to be resolved in accordance with the terms of Section 7.15.

34.     In accordance with the provisions of Section 7.15 of the Agreement, SWFL Vet and the Arsenault sent a Notice of Dispute to PetVet on or around June 6, 2022. A true and correct copy of the Notice of Dispute is attached hereto as **"Exhibit C".**

35.     PetVet was to have responded in writing to the Notice of Dispute within ten (10) days thereafter. SWFL Vet and the Arsenaults did not receive any communication from PetVet within that time period.

36.     In accordance with Section 7.15 of the Agreement, the Parties were then, after having received the response to Notice of Dispute, supposed to meet at a mutually agreeable place,

to attempt to resolve the disputes. Again, no communication from PetVet was received by SWFL Vet or the Arsenaults within the twenty (20) day period after the date of the original Notice of Dispute, and the time period to attempt to resolve the dispute expired.

37.     Thereafter, in accordance with Section 7.15 of the Agreement, any party may serve upon the other party a written demand for non-binding mediation. SWFL Vet and the Arsenaults served a written demand for non-binding mediation on PetVet on June 28, 2022. A true and correct copy of the written demand for mediation is attached hereto as **"Exhibit D"**.

38.     PetVet responded via email on June 29, 2022 that it had selected a neutral auditor, BDO, and saw no reason to mediate.

39.     SWFL Vet and the Arsenaults responded to Buyer on June 29, 2022 via email letter objecting to the one-sided selection of the neutral auditor and stating that until all disputes were resolved it was fruitless for the Parties to proceed to a neutral auditor as SWFL Vet and the Arsenaults, among other things, have been denied access to the documents necessary to confirm and/or determine the correct Earnout Bonus.

40.     On July 13, 2022, PetVet responded that they would be agreeable to SWFL Vet and the Arsenaults proposing a neutral auditor, but have still failed to provide access to the documents necessary to confirm and/or determine the Earnout Bonus.

41.     Pursuant to Section 7.15 of the Agreement, "covenant to mediate shall expire if, for any reason whatsoever, the parties have not appointed a mediator or otherwise resolved the dispute within 45 days after the disputing party's original notice."

42.     Forty-five (45) days have expired since SWFL Vet and the Arsenaults' original Notice of Dispute, having no agreement from PetVet to mediate the disputes or resolution of the dispute, SWFL Vet and the Arsenaults may file this action.

43.    All conditions precedent to bringing the instant action have occurred, been waived, or would be futile.

44.    SWFL Vet and the Arsenaults have engaged the undersigned law firms to represent them in this action and have agreed to pay a reasonable fee for services.

## COUNT I - BREACH OF CONTRACT

45.    The allegations of paragraphs 1 through 44 are alleged and incorporated by reference as if fully set forth herein.

46.    The Agreement is a valid and enforceable contract.

47.    PetVet breach the Agreement as follows:

A.    PetVet failed to deliver a timely determination of EBITDA for the calculation of the Earnout Bonus;

B    PetVet has claimed that the Earnout Period for the Earnout Bonus is one year instead of the two years identified in the Agreement.

C.    PetVet has denied SWFL Vet and the Arsenaults reasonable access to the PetVet records for the purpose of determining EBITDA and Target EBITDA under the Agreement and challenging PetVet's determination of EBITDA under the Agreement.

D.    PetVet unilaterally chose a neutral auditor in contradiction to the terms of the Agreement.

45.    Due to the failure of PetVet to comply with the Agreement, SWFL Vet and the Arsenaults have not timely received a proper Earnout Bonus as required by the Agreement.

7

46.    As a result of PetVet's Action, SWFL Vet and the Arsenaults have and continue to suffer damages.

WHEREFORE, SWFL Vet and the Arsenaults respectively requests that this Court enter judgment in their favor and against PetVet for all damages to which they are legally entitled, attorneys' fees, interest, costs and such other and further relief as this Court deems appropriate.

## COUNT II BREACH OF CONTRACT - INJUNCTIVE RELIEF

47.    The allegations of paragraphs 1 through 44 are alleged and incorporated by reference as if fully set forth herein.

48.    The Agreement is an enforceable contract.

49.    Paragraph (c) of Exhibit A of the Agreement requires that PetVet provide SWFL Vet and the Arsenaults reasonable access to its books and records to verify PetVet's computations of the EBITDA for purposes of calculating the Earnout Bonus.

50.    Despite multiple requests by SWFL Vet and the Arsenaults, PetVet has not provided reasonable access to the books and records.

51.    PetVet has breached the Agreement by denying SWFL Vet and the Arsenaults reasonable access to PetVet's books and records.

52.    As a result, SWFL Vet and the Arsenaults are suffering immeasurable damages.

53.    There is no adequate remedy at law and SWFL Vet and the Arsenaults require injunctive relied to prevent injury to themselves.

54.    There is a substantial likelihood that irreparable harm will result if injunctive relief is not granted.

55.    SWFL Vet and the Arsenaults have a substantial likelihood of success on the merits.

56.    Injunctive relief will serve the public interest.

8

WHEREFORE, SWFL Vet and the Arsenaults respectfully request that this Court enter judgment in his favor and against PetVet for preliminary and permanent mandatory injunctive relief as follows: (1) commanding PetVet to provide SWFL Vet and the Arsenault reasonable access to PetVet's books and records, including, without limitation, all documents, including, but not limited to the original documents from which any excel spreadsheet was created, relating to the calculation of the Target EBITDA and calculation of the EBITDA for purposes of the Earnout Bonus; (2) awarding attorney's fees and costs pursuant to the Agreement and Florida law; and (3) such other and further relief as this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable by right.

Respectfully submitted this 26th day of July, 2022

**BRENNAN MANNA DIAMOND**

By: */s/*Donna M. Flammang _____
      Donna M. Flammang, Esq.
      Florida Bar No. 015230
      8891 Brighton Lane, Suite 112
      Bonita Springs, FL 34135
      Telephone (239) 992-6578
      Facsimile (239) 390-1920
      Primary Email – dmflammang@bmdpl.com
      Secondary Email – acroczko@bmdpl.com

      *Attorney for Plaintiffs*

**THE LAW OFFICE OF ELINOR BAXTER, P.L.L.C.**

By: /s/ Elinor Baxter _____
      Elinor Baxter
      Florida Bar # 981710
      47 South Palm Avenue, Suite 201
      Sarasota, FL  34236
      Telephone: (239) 405-7863
      ebaxter@baxterlawpl.net
      awhitfield@baxterlawpl.net

9



---

**ASSET PURCHASE AGREEMENT**

**among**

**PETVET CARE CENTERS (FLORIDA), LLC,**

**SOUTHWEST FLORIDA VETERINARY SPECIALISTS
INCORPORATED**

**and**

**DR. WENDY G. ARSENAULT**

**and**

**MICHAEL J. ARSENAULT**


**Dated December 24, 2019**

---

**EXHIBIT A**

## TABLE OF CONTENTS

**Page**



i



ii









































*[signatures appear on next page]*

**[Signature Page – Asset Purchase Agreement]**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first above written.

PETVET CARE CENTERS (FLORIDA), LLC, a Delaware limited liability company

By: _____

Name: Gino Volpacchio

Title:  President and CEO

SOUTHWEST FLORIDA VETERINARY SPECIALISTS INCORPORATED, a Florida corporation

By: _____

Name: Dr. Wendy G. Arsenault

Title:  President

Address:    28400 Old 41 Road, Suite 1
            Bonita Springs, FL 34135

_____

Name: Wendy G. Arsenault

Address:    27031 Driftwood Drive
            Bonita Springs, FL 34135-4320

_____

Name: Michael J. Arsenault

Address:    27031 Driftwood Drive
            Bonita Springs, FL 34135-4320

**EXHIBIT A**







**LISTEN, SOLVE, EMPOWER.**
**P:** 239.992.6578  **F:** 239.390.1920  **W:** bmdpl.com
8891 Brighton Lane, Suite 112, Bonita Springs, FL 34135

Donna M. Flammang
Partner
M: 239.992.6578
D: 239.405.8672
E: dmflammang@bmdpl.com

May 11, 2022

**Via email (apark@petvetcarecenters.com and rsnipes@petvetcarecenters.com)**

Adeline C. Park, Esq.
General Counsel
PetVet Care Centers(Florida), LLC
1 Gorham Island, Suite 300
Westport, CT 06880

      **Re:**    **PetVet Response to Notice of Disagreement**

Dear Ms. Park:

Please be advised that this firm represents Southwest Florida Veterinary Specialists Incorporated ("Seller") and Dr. Wendy and Michael Arsenault (collectively, the "Owners"). I have been forwarded a copy of your letter dated May 5, 2002, for review and reply.  Please also be advised that this letter is not intended to be a comprehensive rebuttal to your letter or of the numerous breaches of Exhibit A of the asset purchase agreement dated December 24, 2019 ("Asset Purchase Agreement") by PetVet Care Centers (Florida), LLC ("PetVet").

The Seller and Owners were never given "reasonable access" to the books and records of PetVet. Seller and Owners never had access to any financial information that would allow them to verify PetVet's computation of EBDITA.  The only financial information given to Seller and Owners was one Excel spreadsheet.  Seller and Owners were informed, twice after request for same, that there would be no in person meetings "during regular business hours" as specified in the Asset Purchase Agreement, but that ALL issues would be resolved via email.  No additional meaningful financial information was provided to Seller and Owners along with the email response. Relying on email responses from PetVet employees, not the verification of written financial records is not a negotiation, it is a take it or leave it.

<u>After</u> a Notice of Disagreement has been received by PetVet from Seller and Owners, there is to be a 15-day period in which a good faith attempt is made by the parties to resolve any issues brought up in the Notice of Disagreement. That was clearly not done as the issues set forth in the Notice of Disagreement were, as you have stated, disregarded.

Akron   Canton   Cleveland   Columbus   Bonita Springs   Jacksonville   Orlando   Phoenix/Scottsdale

**EXHIBIT B**

Adeline C. Park, Esq.
May 11, 2022
Page 2 of 2

---

Please provide me with the name and address of the person who will be acting as the "Neutral Auditor". Such information is needed to investigate whether or not the auditor is truly neutral and needed so that Seller and Owners can send their calculations of the EBDITA to that individual. Time is of the essence so please provide this information within five (5) days of the date of this letter.

Very truly yours,

Donna M. Flammang

DMF/acr

4856-0336-5919, v. 1



**LISTEN. SOLVE. EMPOWER.**
P: 239.992.6578  F: 239.390.1920  W: bmdpl.com
8891 Brighton Lane, Suite 112, Bonita Springs, FL 34135

Donna M. Flammang
Partner
M: 239.992.6578
D: 239.405.8672
E: dmflammang@bmdpl.com

June 3, 2022

<u>**VIA OVERNIGHT COURIER**</u>
PetVet Care Centers (Florida), LLC
1 Gorham Island, Suite 300
Westport, CT 06880
Attn: Gino Volpacchio, President and CEO

      **Re:**    **Notice of Dispute**

Dear Mr. Volpacchio:

As you may already be aware, this firm represents Southwest Florida Veterinary Specialists Incorporated ("Seller") and Dr. Wendy and Michael Arsenault (collectively, the "Owners"). This letter is being written in accordance with Section 7.15 of the asset purchase agreement dated December 24, 2019 ("Asset Purchase Agreement") among PetVet Care Centers (Florida), LLC ("PetVet") and Seller and Owners. As in accordance with Section 7.15 of the Asset Purchase Agreement, my clients would expect a response from PetVet within ten (10) days of receipt of this letter, including a summary of the evidence and arguments supporting PetVet's position. Promptly thereafter, the parties are to meet at a mutually agreeable location to resolve the disputes. If, for any reason whatsoever, the disputes have not been resolved within twenty (20) days after the disputing party's original notice, any party may serve on the other a written demand for non-binding mediation of the disputes in the Cape Coral-Fort Myers, Florida Metropolitan Statistical area. During such period, the parties agree not to file any judicial action; provided, however, that any party may seek a preliminary injunction or other preliminary judicial relief if in such party's judgment such action is necessary to avoid irreparable damage.

Seller and Owners dispute encompass the following issues:

The Seller and Owners were never given "reasonable access" to the books and records of PetVet as stated in Exhibit A (c). Seller was to "have reasonable access to the books and records of Buyer relating to the calculations of the EBITDA during regular business hours for the sole purpose of verifying Buyer's computation of the EBITDA." Seller and Owners never had access to any financial information that would allow them to verify PetVet's computation of EBDITA. The only financial information given to Seller and Owners at first was one Excel spreadsheet. Seller and Owners were informed, twice after request for same, that there would be no in person meetings "during regular business hours" as specified in the Asset Purchase Agreement, but that ALL issues would be resolved via email as stated in Tony DiPippa, CFO, March 14 email to Owner, Mike

PetVet Care Centers (Florida), LLC.
June 3, 2022
Page 2 of 3

Arsenault, that "there will be no face-to-face meeting, and everything must be in writing". Therefore, Seller and Owners have no way of accurately determining Seller's EBITDA due to the refusal of Buyer to allow Seller and Owners to come to its headquarters to review the books and records pertaining to the calculation of EBITDA. While another Excel spreadsheet was provided to Seller and Owners, no additional **meaningful** financial information was provided to Seller and Owners along with the various email responses. Relying on email responses from PetVet employees is not adequate.

**After** a Notice of Disagreement dated April 20, 2022, had been received by PetVet from Seller and Owners (which was delivered to PetVet via hand delivery, there is to be a 15-day period in which a good faith attempt is made by the parties to resolve any issues brought up in the Notice of Disagreement. There was no negotiations among the parties after the Notice of Disagreement was delivered, and in Ms. Adeline Parks letter dated May 5, 2022, she stated "*that PetVet's position is that it has complied with its obligations under the Purchase Agreement to provide Seller Parties with reasonable supporting documentation and access to books and records for the purposes of the Seller Parties to verify Buyer's computations of the EBITDA and the Earnout Payment*" by the proving of various emails to Seller and Owners which did not allow Seller and Owners to review any books and records of Buyer pertaining to the calculation of EBITDA and the Earnout bonus.

Seller and Owners requested financial information as to how the Target EBITDA was calculated and they were never provided with such information even though in the May 13, 2022 telephone discussion between Reggie Snipes of PetVet and myself, I requested such information and Mr. Snipes stated it would be provided.

The Earnout Period, as defined in Exhibit A of the Asset Purchase Agreement, means the period beginning on the Closing Date and ending upon the second (2nd) anniversary of the Closing Date. Therefore, the Earnout Period encompasses a two-year period. Therefore, EBITDA, as defined in Exhibit A, is to mean the **annualized** EBITDA of the Business based on the last twelve months of EBITDA of the Business as of the second (2nd) anniversary of the Closing Date, as determined by Buyer in accordance with the accounting principles consistently applied by Buyer. Even though EBITDA is only calculated of the second year period it must apply to both years in the Earnout Period and therefore, needs to be doubled to cover both years within that period. This was not taken into account in the calculation of EBITDA by PetVet.

Using Buyer's Excel spreadsheet provided with Buyer's EBITDA calculation, Seller and Owners found various issues with charges that need to be explained and can only be explained by reviewing the books and records of Buyer which pertain to this issue. These disputed charges consist of the following: (1) "Document Dated" expenses-invoices from fiscal year 2020 that were pushed into "Dated" fiscal 2021 and deemed 2021 expenses that were actually 2020 expenses. (2) Errors found and compiled from the Excel spreadsheet which were either entered in error or had no supporting documentation. (3) Charges with no "Account Entry Description, (4) Suspicious charges relating to vendor named "IDEXX Distributors". All of these items will affect the calculation of EBITDA.

Seller and Owners, while operating the Business used cash accounting. It is perceived that PetVet is using accrual accounting, but such has not been collaborated. Reviewing the conversion from cash to accrual accounting would also be necessary to ensure that it was done correctly.

PetVet Care Centers (Florida), LLC.
June 3, 2022
Page 3 of 3

---

In Exhibit A(d) it states that "if Seller and Buyer are unable to resolve the disagreement within fifteen (15) days following the receipt by Buyer of the Notice of Disagreement, then **the parties shall retain the services of the Neutral Auditor** to resolve the disagreement and make a determination with respect thereto. This means that the Seller and Buyer must mutually agree on the choice of the Neutral Auditor.  It does not contemplate that only Buyer will have the choice of the Neutral Auditor as is set forth in Exhibit A(g).   The Neutral Auditor should be chosen by both parties, not just one party, and should certify that they have never performed work for either party.

We await your response within the applicable time period.

Very truly yours,

Donna M. Flammang

DMF/acr

4893-3770-8323, v. 1



**LISTEN. SOLVE. EMPOWER.**
**P:** 239.992.6578 **F:** 239.390.1920 **W:** bmdpl.com
8891 Brighton Lane, Suite 112, Bonita Springs, FL 34135

Donna M. Flammang
Partner
M: 239.992.6578
D: 239.405.8672
E: dmflammang@bmdpl.com

June 28, 2022

**VIA FEDERAL EXPRESS**
PetVet Care Centers (Florida), LLC
1 Gorham Island, Suite 300
Westport, CT 06880
Attn: Gino Volpacchio, President and CEO

    **Re:    Demand for Mediation**

Dear Mr. Volpacchio:

This letter is being written in accordance with Section 7.15 of the asset purchase agreement dated December 24, 2019 ("Asset Purchase Agreement") among PetVet Care Centers (Florida), LLC ("PetVet") and Southwest Florida Veterinary Specialists Incorporated ("Seller") and Dr. Wendy G. Arsenault and Michael J. Arsenault ("Owners"). In accordance with Section 7.15 of the Asset Purchase Agreement, if there is no response received from PetVet within ten (10) days of receipt of Seller and Owners' original notice of dispute sent to you on June 6, 2022 (and received by you on June 7, 2022), including a summary of the evidence and arguments supporting PetVet's position, and if there is no attempt from PetVet to communicate with the Seller and Owners and agree to meet at a mutually agreeable location to resolve the disputes, then, for any reason whatsoever, if the disputes have not been resolved within twenty (20) days after the disputing party's original notice, any party may serve on the other a written demand for non-binding mediation of the disputes in the Cape Coral-Fort Myers, Florida Metropolitan Statistical area.

With that said, please consider this letter as a formal demand for non-binding mediation of the dispute in the Cape Coral-Fort Myers, Florida Metropolitan Statistical Area pursuant to Section 7.15 of the Asset Purchase Agreement. Please contact our office so soon as possible regarding coordinating mediation. Should you fail to contact our office within the time period provided for mediation of the dispute, we will assume that you are choosing to waive mediation.

We await your response.

Very truly yours,

Donna M. Flammang

DMF/acr

                                                     4890-8630-3526, v. 1

Akron   Canton   Cleveland   Columbus   Bonita Springs   Jacksonville   Orlando   Phoenix/Scottsdale

**EXHIBIT D**



**After printing this label**:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**FORM 1.997.     CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I.     **CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>TWENTIETH</u>  JUDICIAL CIRCUIT, IN AND FOR <u>LEE</u>  COUNTY, FLORIDA

<u>Southwest Florida Veterinary Specialists Incorp, Wendy G Arsenault, Michael J Arsenault</u>
Plaintiff                                                                    Case # _____

                                                                             Judge _____

vs.

<u>PetVet Care Centers (Florida), LLC</u>
 Defendant

II.     **AMOUNT OF CLAIM**
Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

III.     **TYPE OF CASE**      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

- 2 -

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

  2

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Elinor E. Baxter      Fla. Bar # 981710
     Attorney or party          (Bar # if attorney)

Elinor E. Baxter         07/26/2022
  (type or print name)        Date

- 3 -

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY

SOUTHWEST FLORIDA VETERINARY
SPECIALISTS INCORPORATED and DR. WENDY
G. ARSENAULT and MICHAEL J. ARSENAULT,

                        **Plaintiffs,**

**v.**                                          Case No. 22-CA-003187

PETVET CARE CENTERS (FLORIDA), LLC,

                        **Defendant.**

_____/

## SUMMONS:

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE:  You are commanded to serve this Summons and a copy
of the Complaint in this lawsuit on the above-named Defendant(s).

TO:         **PETVET CARE CENTERS (FLORIDA), LLC**
            **REGISTERED AGENT**
            **C T CORPORATION SYSTEM**
            **1200 SOUTH PINE ISLAND ROAD**
            **PLANTATION, FL 33324**

Each defendant is required to serve written defenses to the complaint or petition on:

PLAINTIFF'S ATTORNEY: **Elinor E. Baxter**
ADDRESS:                **THE LAW OFFICE OF ELINOR BAXTER, P.L.L.C.**
                        **47 South Palm Avenue, Suite 201**
                        **Sarasota, FL 34236**
                        **Telephone:    (239) 405-7863**
                        **E-Mail:        ebaxter@baxterlawpl.net**

within 20 days after service of this summons on that defendant, exclusive of the day of service,
and to file the original of the defenses with the Clerk of this court either before service on plaintiff's
attorney or immediately thereafter.  **If a defendant fails to do so, a default will be entered
against that defendant for the relief demanded in the complaint or petition.**

DATED ON July 26, 2022.

Kevin C. Karnes
~~Linda Doggett~~
As Clerk of the Court

By: *Kennedy Harris*
As Deputy Clerk

**If you are a person with a disability who needs any accommodation in order to participate in a court proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Brooke Dean, Operations Division Manager for the 20th Judicial Circuit whose office is located at the Lee County Justice Center, 1700 Monroe St., Fort Myers, FL 33901, and whose telephone number is (239) 533-1771, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

7/26/2022 4:57 PM FILED LEE COUNTY CLERK OF COURTS

IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA                                                    CIVIL ACTION

CASE NO: 22-CA-003187

Southwest Florida Veterinary Specialists Incorporated et al
   Plaintiff
vs
PetVet Care Centers Florida LLC
   Defendant
_____/

## STANDING ORDER IN CIRCUIT CIVIL CASES IN THE TWENTIETH JUDICIAL CIRCUIT

PURSUANT to Florida Rule of Civil Procedure 1.200(a), Florida Rule of Judicial Administration 2.545, and Administrative Order 1.13 (as amended) entered by the Chief Judge of this Circuit, the parties are ordered to adhere to the following information and procedures applicable to civil lawsuits:

1. **SERVICE OF THIS ORDER.** The Plaintiff is directed to serve a copy of this order with each Summons issued in this case.  One copy of this Order is to be filed with the Clerk of the Circuit Court with proof of service. The Plaintiff shall pay the appropriate statutory clerk's fees on copies for each Standing Order issued and attached to the Summons.

2. **CIVIL CASE MANAGEMENT SYSTEM.** The Supreme Court of Florida has established guidelines for the prompt processing and resolution of civil cases.  This Court has adopted a case management system to help meet those guidelines.  In contested cases (other than residential foreclosures, involuntary commitment of sexually violent predators, Extraordinary Writs, 90 day Notice of Medical Malpractice Claim, and Administrative Appeals), the parties are required to participate in the case management system.  The Court will issue a Case Management Plan after 150 days of the filing of a case in the event the parties have not submitted an Agreed Case Management Plan that has been approved by the Court.  However, if it becomes necessary to amend the court-issued Case Management Plan, the parties may submit an Agreed Case Management Plan, subject to approval by the Court, or if the parties cannot agree on an Amended Plan, the parties may request a case management conference.  The form of the Agreed Case Management Plan may be accessed at the Court's website at: https://www.ca.cjis20.org/Programs/Civil-Case-Management/generalcivil.aspx. If a case management conference is scheduled, attendance by trial counsel and those parties who are not represented by counsel is mandatory.  Agreed Case Management Plans are to be submitted to Lee County Civil Case Management by email in Word format to LeeCircuitCivilCM@ca.cjis20.org or if no access to email then mailed to Lee County Civil Case Management 1700 Monroe Street Fort Myers Fl. 33901. DO NOT file with the Clerk of Court.

3. **ALTERNATIVE DISPUTE RESOLUTION (ADR).** ADR provides parties with an

Rev. 9/28/21

out-of-court alternative to settling disagreements.  The Court requires the parties to participate in ADR prior to trial.  Mediation is mandatory unless the parties agree to another form of ADR.  Mediation is a conference at which an independent third party attempts to arrange a settlement between the parties. The Court, at its discretion, may order the case be referred to Non-Binding Arbitration.  Non-Binding Arbitration is the process in which the court refers a case to a registered arbitrator, or panel of arbitrators, who will hear evidence and make an award which may become a final judgment if a Motion for Trial De Novo is not timely filed pursuant to Fla.R.Civ.P. 1820(h).

      4. **FAILURE TO PROSECUTE.** The Court will issue a Notice of Intent to Dismiss a case if there is no record of activity within a ten (10) month period of time.

      5. **RULES OF PROFESSIONALISM.**  The Twentieth Judicial Circuit has adopted Administrative Order 2.20, which sets forth standards of professional courtesy and conduct for all counsel practicing within the Circuit and self-represented litigants.  The Court requires that all familiarize themselves and comply with Administrative Order 2.20.  Administrative Order 2.20 may be viewed on the Court's website at: http://www.ca.cjis20.org/web/main/ao_admin.asp

      **DONE AND ORDERED** in Chambers at Fort Myers, Lee County, Florida.

/s/Alane C. Laboda
Administrative Circuit Judge

**\*\*\*\*Original on file in the office of the Circuit Court Administrative Judge, Lee County**

### 22-CA-003187 : Southwest Florida Veterinary Specialists Incorporated et al Plaintiff vs PetVet Care Centers Florida LLC Defendant

| | | | |
|---|---|---|---|
| Case Type: | CA Contracts and Indebtedness | Date Filed: | 07/26/2022 |
| Location: | Div I | UCN: | 362022CA003187A001CH |
| Judge: | Joseph C Fuller | Status: | Filed |
| Citation Number: | CA Contracts and Indebtedness | Appear By Date: | |

| Parties | | | |
|---|---|---|---|
| Name | DOB | Attorney | Atty Phone |
| Southwest Florida Veterinary Specialists Incorporated | | Donna Flammang | 239-992-6578 |
| Wendy Arsenault | | Donna Flammang | 239-992-6578 |
| Michael Arsenault | | Donna Flammang | 239-992-6578 |
| PetVet Care Centers Florida LLC | | | |

| Charge Details | | | | |
|---|---|---|---|---|
| Offense Date | Charge | Plea | Arrest | Disposition |

| Docket Events | | | |
|---|---|---|---|
| Date | Description | Docket Number | Pages |
| 07/26/2022 | UCR Case Initiation | 1 | |
| 07/26/2022 | Civil Cover Sheet | 2 | 3 |
| 07/26/2022 | Summons Submitted for Issuance - New Case<br />Issued | 3 | 2 |
| 07/26/2022 | Complaint | 4 | 50 |
| 07/26/2022 | Standing Order in Circuit Civil Cases | 5 | 2 |

| Hearings | | | |
|---|---|---|---|
| Date | Time | Hearing | Location |

| Financial | | | |
|---|---|---|---|
| Date | Description | Payer | Amount |
| 07/26/2022 | Charge | Southwest Florida Veterinary Specialists Incorporated | 410.00 |
| 07/26/2022 | Payment | Southwest Florida Veterinary Specialists Incorporated | 410.00 |
| | | Balance Due: | 0.00 |

| Bonds | | | |
|---|---|---|---|
| Description | Status Date | Bond Status | Amount |

| Warrants | | | | | | |
|---|---|---|---|---|---|---|
| Number | Status Description | Issue Date | Service Date | Recall Date | Expiration Date | Warrant Type |